UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMAL STEPHENSON, et al., On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN A. HOPKINS, SR., <br> JOHN A. HOPKINS, SR. <br> 108 White Oak Dr. <br> Youngsville, NC 27596-9769 <br><br> —and— <br><br> DAWN SMITH <br> c/o Family Solutions USA <br> 11635 Northpark Drive <br> Wake Forest, NC 27587 <br><br> —and— <br><br> NANCY HOPKINS <br> 108 White Oak Dr. <br> Youngsville, NC 27596-9769 <br><br> —and— <br><br> JOHN A. HOPKINS, JR. <br> 108 White Oak Dr. <br> Youngsville, NC 27596-9769 <br><br> —and— <br><br> TIFFANY HOPKINS <br> 108 White Oak Dr. <br> Youngsville, NC 27596-9769 <br><br> —and— | CASE NO. 1:24-cv-01830 <br><br> JUDGE SOLOMON OLIVER, JR. <br><br><br><br><br><br> **PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR EQUITABLE, DECLARATORY, AND MONETARY RELIEF** <br><br> **[Jury Demand Endorsed Hereon]** |

| | |
|---|---|
| FAMILY SOLUTIONS USA, INC.<br>11635 Northpark Drive, Suite 320<br>Wake Forest, NC 27587<br><br>—and—<br><br>HOPKINS GLOBAL SOLUTIONS INC.<br>11635 Northpark Drive, Suite 320<br>Wake Forest, NC 27587<br><br>—and—<br><br>PROSTAR MANAGEMENT, INC.<br>c/o John Hopkins<br>108 White Oak Dr.<br>Youngsville, NC 27596-9769<br><br>—and—<br><br>FAMILY SOLUTIONS OF<br>LOUISIANA, INC.<br>2798 O'Neal Ln Bldg. D<br>Baton Rouge, LA 70816-3407<br><br>—and—<br><br>FAMILY SOLUTIONS OF ILLINOIS,<br>INC.<br>219 W Chicago Ave Ste. 200<br>Chicago, IL 60654-5600<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs Jamal Stephenson and Melanie Baron ("Plaintiffs") through counsel, respectfully file this Amended Class Action Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B), against Defendants John A. Hopkins, Sr., Dawn Smith, Nancy Hopkins, John A. Hopkins, Jr., Tiffany Hopkins, Family Solutions USA, Inc., Hopkins Global Solutions, Inc., Prostar Management, Inc., Family Solutions of Louisiana, Inc., and Family Solutions of Illinois, Inc. (sometimes collectively referred to as "Defendants").

2

## INTRODUCTION

1.  This class action asserts two types of claims. Breach of contract claims are asserted against Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. As alleged herein, said Defendants entered into a written settlement agreement with Plaintiffs and other class members, agreeing to pay them the Total Settlement Amount of $535,000, but have breached that agreement by failing to make the installment payments. Against all Defendants, this complaint asserts claims under the Ohio Fraudulent Transfer Act, R.C. §§ 1336.01, et seq., as well as other factually-related claims under Ohio law. As alleged herein, Defendants made or received transfers of assets to hinder or delay payment of the Total Settlement Amount, and/or to hinder or delay Plaintiffs and other class members from obtaining or collecting that amount. The recipients of such transfers include third parties not yet named. Defendants conspired among themselves, and/or with other parties, to effectuate the transfers.

## JURISDICTION AND VENUE

2.  Defendants removed this case from the Court of Common Pleas of Cuyahoga County, Ohio. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and division and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

3

## PARTIES

4. At all times relevant, Plaintiff Jamal Stephenson and Melanie Baron were citizens of the United States and of Ohio. At all times relevant, Plaintiff Baron resided in Cuyahoga County, Ohio, within this judicial district and division.

5. Plaintiffs Stephenson and Baron are representatives of a class of similarly-situated persons, defined herein. Plaintiffs and other class members were employed by a company called Family Solutions of Ohio, Inc. ("FSO"), which was owned and operated by some or all of the Defendants.

6. Defendant John A. Hopkins, Sr. is the President and Chief Executive Officer of Family Solutions USA and Hopkins Global Solutions, Defendants herein, the owner of Defendant Prostar Management, and the President and Board Chairman of FSO. John A. Hopkins, Sr. describes himself on LinkedIn as "a high-level entrepreneur."

7. Defendant Dawn Smith is an individual residing in North Carolina. She is the Chief Operating Officer of Family Solutions USA and Hopkins Global Solutions. She also serves as Vice-President and Chief Operating Officer of FSO.

8. Defendant Nancy Hopkins is an individual residing in North Carolina, and is Defendant John A. Hopkins Sr.'s wife. She is the Chief Financial Officer of Family Solutions USA. She serves as Treasurer and Board member of FSO and regularly participates in its operation.

9. Defendant John A. Hopkins, Jr. is an individual residing in North Carolina, and is Defendant John A. Hopkins, Sr.'s son. He serves as a Vice-President and Board member of FSO and regularly participates in its operation.

10. Defendant Tiffany Hopkins is an individual residing in North Carolina, and is Defendant John A. Hopkins Sr.'s daughter. She serves as Secretary and Board member of FSO and regularly participates in its operation.

11. Defendant Family Solutions USA is a North Carolina corporation owned and operated by John A. Hopkins, Sr. and Nancy Hopkins, and is a parent or affiliate of FSO.

12. Defendants Hopkins Global Solutions, Inc. and Prostar Management, Inc. are also North Carolina corporations owned and operated by John A. Hopkins, Sr. and Nancy Hopkins.

13. Defendants Family Solutions of Louisiana, Inc. and Family Solutions of Illinois, Inc. are owned and operated by John A. Hopkins, Sr.

## FACTUAL ALLEGATIONS

### Defendants' Debts to Plaintiffs and the Class

14. Plaintiffs and other class members worked for FSO as Qualified Mental Health Specialists ("QMHS"). During that employment, Defendants John A. Hopkins, Sr. and Dawn Smith incurred debts to Plaintiffs and other class members in unpaid wages and overtime compensation. Stated simply, Plaintiffs and other class members were paid for most hours that were billable to Medicaid and insurance plans, but were not paid for time spent traveling between clients, entering documentation into clients' electronic health records, or dealing with no-show appointments.

15. Wage-and-hour claims arising from the non-payment of those wages and overtime compensation were the subject of a separate action against FSO as well as

against Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management. That action was Case No. 1:18-cv-2017 in the U.S. District Court for the Northern District of Ohio ("the Wage Case").

16. In March 2023, all parties in the Wage Case jointly moved the court for approval of a class settlement. The defendants who were parties to the settlement included John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc., as well as FSO. Those parties agreed to pay a Total Settlement Amount of $535,000 to Plaintiffs and other class members. That amount was to be paid in three installments on November 1, 2023, June 1, 2024, and January 2, 2025.

17. John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. breached the settlement agreement by failing to make even the first installment payment in full.

18. On September 5, 2024, Family Solutions of Ohio filed a voluntary petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of North Carolina.

19. Demand for payment has been made to the other parties to the Wage Case settlement — i.e., Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. — but they have declined to meet their contractual obligations.

**Defendants' Revenue-Generating Entities and Activities**

20. Defendant Family Solutions USA's website states that the company is "a national behavioral healthcare provider" with a "over 11 offices in the District of Columbia, Illinois, Louisiana, Ohio, and Texas."

6

21. Those various offices, which are affiliates or subsidiaries of Family Solutions USA, Inc. generate substantial revenue. For instance, FSO alone has sales well into the millions annually.

22. Hopkins Global Solutions has its Corporate Headquarters in North Carolina, but maintains a separate office in Nairobi, Kenya. According to its website, the company "provide[s] accountable and efficient community development services to help developing communities gain and sustain prosperity." Its LinkedIn profile states that it "specializes in the sectors of community development, procurement, industrialization, and infrastructure." "[O]ur main focus is in the mining sector. Specifically, the production and trade of mining rare gemstones, gold, and oil at both the artisanal and semi-industrial levels."

23. Prostar Management, Inc., headquartered in Youngsville, N.C., provides management services on a multistate scope.

24. Defendants John A. Hopkins, Sr., Dawn Smith, Nancy Hopkins, John A. Hopkins, Jr., and Tiffany Hopkins hold various high-level positions in these and other entities and participate in their operation. Either together or in various combinations, these individual Defendants own the corporate entities and/or control their revenue streams.

25. Defendants John A. Hopkins, Sr. and Nancy Hopkins have obtained multi-million-dollar incomes from these and other entities and activities. Publicly available information reveals that the Internal Revenue Service filed federal tax liens against John A. Hopkins, Sr. and Nancy Hopkins for unpaid federal income taxes exceeding $800,0000.

7

Inferentially, the total incomes of Defendants John A. Hopkins, Sr. and Nancy Hopkins were several multiples of their unpaid tax bill.

## Defendants' Fraudulent Transfers

26. From 2018 through 2023, during the pendency of the Wage Case, decision after decision from that litigation alerted Defendants that their pay practices at FSO were quite patently illegal and that they have stolen millions of dollars in wages from the class members.

27. By way of example, the Wage Case defendants' dispositive motion was denied in all meaningful respects on March 2, 2021. Plaintiffs' motion for Rule 23 class certification was granted on April 5, 2021. The Wage Case defendants asked the Sixth Circuit to overrule the Rule 23 class certification and were rejected on June 22, 2022. The Wage Case defendants moved to decertify the FLSA collective and were rejected on December 9, 2022.

28. Instead of tightening the company purse strings or even closing FSO down, the various individual Defendants in this case siphoned the assets of FSO and transferred such assets to themselves, as well as to third parties.

29. Indeed, with clear knowledge of their liability to the class members in the Wage Case, gained through years of litigation in which that court repeatedly rejected essentially all proffered defenses, Defendants enriched their finances by transferring assets to John A. Hopkins Sr. and Dawn Smith, and to John Hopkins Sr.'s wife, Nancy Hopkins. In the years preceding the Wage Case settlement, Defendants also added the

8

Hopkins children — Defendants John Hopkins, Jr. and Tiffany Hopkins — to the FSO payroll, while simultaneously continuing to steal wages from FSO employees.

30. The Wage Case settlement was approved on July 10, 2023. Within months, just as settlement payments were to commence in the Wage Case, Defendant John Hopkins, Sr. caused huge sums to be transferred from FSO to himself and his other corporations. Between September 2023 and September 2024 alone, he transferred $300,000 to himself in alleged "compensation" from FSO, as well as an additional $140,000 to himself as an "owner disbursement."

31. Despite that $440,000 in compensation paid from FSO in the 12 months after inking his obligation to pay the class members, and despite dozens of efforts to engage him in the 15 months since the first settlement payment was not made in full, Defendant John Hopkins, Sr. has not personally contributed one penny toward his obligations on the Wage Case.

32. Defendant John Hopkins, Sr. also transferred significant amounts to other entities which he controls. According to filings in the FSO bankruptcy, FSO transferred $454,218 to Defendant Hopkins Global Solutions, $359,200 to Defendant Family Solutions of Louisiana, and $175,600 to Defendant Family Solutions of Illinois. Despite the prompts on the bankruptcy forms, FSO did not disclose the reason for these transfers.

33. On information and belief, these sums were, in part, siphoned from FSO to make fraudulent transfers to John Hopkins, Sr., Nancy Hopkins, John Hopkins, Jr., Tiffany Hopkins, and Dawn Smith.

9

34. As of March 2022, a forensic economist's report entered into the record of the Wage Case estimated the amount owed to Plaintiffs and other class members in unpaid wages and overtime compensation to be in excess of $6,112,000.

35. Meanwhile, upon information and belief, with the assets siphoned from FSO in the face of impending substantial personal liability, Dawn Smith purchased a new home in April 2021 worth nearly twice as much as her prior residence.

36. Moreover, upon information and belief, with assets siphoned from FSO, John A. Hopkins, Sr. chartered jets allowing him to travel around the world in the years preceding the settlement of the Wage Case.

37. Most recently, in August 2024, when Plaintiffs made a final effort to resolve the unpaid settlement installments before filing this case, John A. Hopkins, Sr. set off to Africa and refused to engage.

38. These examples and the surrounding circumstances evidence Defendants' clear intent to defraud Plaintiffs and other class members. Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. agreed to pay the Total Settlement Amount of $535,000 to them, then completely failed to make the installment payments. Before and after the settlement, said Defendants transferred assets to themselves and related parties, including John Hopkins Sr.'s wife and children. All of the transfers hindered or delayed payment of the Total Settlement Amount, and/or hindered or delayed Plaintiffs and other class members from obtaining or collecting that amount.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

40. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and other members of a class. The proposed class is identical to the one defined and certified by the U.S. District Court for the Northern District of Ohio in the Wage Case: All employees who worked in Ohio as Qualified Mental Health Specialists ("QMHS") for Family Solutions of Ohio during the period September 16, 2016 to April 5, 2021.

41. The class is so numerous that joinder of all class members is impracticable. The class members were identified in the Wage Case and they exceed 200 persons.

42. There are questions of law or fact common to the Class, including but not limited to:

> a) Whether Defendants transferred or received assets of FSO, and/or other entities, for their own benefit;
>
> b) Whether Defendants transferred or received assets of FSO, and/or other entities, while knowing that FSO could not meet its ability to pay debts as they became due;
>
> c) Whether Defendants' transfers or receipt of monies directly or indirectly from FSO violated provisions of the Ohio Fraudulent Transfer Act, R.C. § 1336.01, et seq.; and
>
> d) Where the transferred sums or proceeds are currently held or deposited.

43. Plaintiffs' claims are typical of the claims of other members of the Class. Plaintiffs' claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other class members.

11

44. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiffs' counsel have broad experience in handling class action litigation and are fully qualified to prosecute the claims of the Class in this case.

45. The questions of law or fact that are common to the Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the class members, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members. The issues are readily determinable on a classwide basis.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Rule 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## PERSONAL JURISDICTION
### (Long-Arm Statute)

47. Plaintiffs incorporate the paragraphs above as if fully re-written.

48. This case asserts causes of action that arose from Defendants' (1) transacting business in this state; (2) contracting to supply services or goods in this state; (3) causing tortious injury by acts or omissions in this state; (4) causing tortious injury in this state by

acts or omission outside this state, by virtue of the fact that Defendants regularly conduct or solicit business, or engages in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state; (5) causing tortious injury in this state to persons by acts outside this state committed with the purpose of injuring persons, in that Defendants must reasonably have expected that persons would be injured thereby in this state; (6) causing tortious injury to persons by criminal acts, one or more elements of which took place in this state, which Defendants committed or in which they were complicit; and/or (7) having interest in, using, or possessing real property in this state.

## COUNT ONE
### (Breach of Contract)

49. Plaintiffs incorporate the paragraphs above as if fully re-written.

50. The Settlement Agreement entered into by the parties in the Wage Case constituted a written contract.

51. Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. breached the Settlement Agreement by failing to make even the first installment payment in full.

52. Said Defendants are liable to Plaintiffs and other class members for breach of contract.

53. Plaintiffs and other class members suffered damages as a result of said Defendants' breach.

54. The Settlement Agreement in the Wage Case stated that "[t]he parties request that the Court retain jurisdiction to enforce the terms of the Settlement and this

Settlement Agreement." Doc. 201-1, attached as Exhibit A, at ¶ 44. Plaintiffs have filed a motion in the Wage Case asking the Court to enforce the Settlement Agreement against Defendants John Hopkins, Sr., Dawn Smith, and Prostar Management, Inc. on account of nonpayment.

55. If the Court in the Wage Case does not entertain Plaintiffs' motion or grant enforce of the Settlement Agreement, judgment for breach of contract is sought in this case against Defendants John A. Hopkins, Sr., Dawn Smith, and Prostar Management, Inc.

## COUNT TWO
### (Fraudulent Transfer Liability)

56. Plaintiffs incorporate the paragraphs above as if fully re-written.

57. Plaintiffs and other members of the Class are "creditors" within the meaning of the Ohio Fraudulent Transfer Act, R.C. §§ 1336.01. The Ohio Supreme Court has held that "[a]n individual possessing a cause of action … is a 'creditor' within the meaning of R.C. 1336.01(C) and has the right to question an alleged fraudulent conveyance." *Stein v. Brown*, 18 Ohio St. 3d 305, 308 (1985), *cited in Prokos v. Hines*, 2014-Ohio-1415, ¶ 71 (Ohio App. 2014).

58. A transfer "is fraudulent as to a creditor" when the creditor's claim arose "before, or *within a reasonable time … after*, the transfer" (not to exceed four years). R.C. 1336.04(A).

59. The Act nullifies "every conveyance made with actual intent to hinder, delay, or defraud a present or future creditor." *Stein*, 18 Ohio St. 3d at 308, *cited in Walters v. Walters*, 2013-Ohio-2554, ¶ 34 (Ohio App. 2013). Thus, the statute applies to "transfers

14

made with the intent to defraud future creditors." *Blood v. Nofzinger*, 162 Ohio App. 3d 545, 554 (2005). This application of the statute is designed to cover situations in which "a debtor [makes] a fraudulent transfer in anticipation of a claim." *Id*.

60. All the Defendants were "insiders" with respect to the transfers within the meaning of the Ohio Fraudulent Transfer Act, Ohio Rev. Code Ann. § 1336.01, et seq.

61. Defendants' transfers to themselves, as well as to other parties and entities, violated multiple provisions of the Ohio Fraudulent Transfer Act.

62. Defendants' transfers were "transfers" of "assets" within the meaning of Ohio Rev. Code Ann. § 1336.01.

63. Some or all of the transferees of the assets were "insiders" within the meaning of Ohio Rev. Code Ann. § 1336.01.

64. Defendants' transfers violated R.C. 1336.04, which prohibits any transfer of assets made with (a) actual intent to defraud any creditor of the transferor, or (b) where the transferor receives inadequate consideration for the assets in the face of a reasonably foreseeable debt which the transferor will be unable to pay. R.C. 1336.04(A)(1) and (A)(2)(b).

65. Defendants' transfers were made with the actual intent to hinder, delay, or defraud Plaintiffs and other class members.

66. Defendants' transfers rendered some or all parties unable to pay their obligations to Plaintiffs and other class members.

67. Defendants' transfers were made without an exchange of reasonably equivalent value.

15

68. Some or all of Defendants' transfers violated R.C. 1336.05(A). That section prohibits a transfer of assets made by a transferor as to any creditor whose claim arose before the transfer if the transferor made the transfer without receiving a reasonably equivalent value in exchange and the transferor was insolvent at that time or became insolvent as a result of the transfer.

69. Some or all of Defendants' transfers were made after obligations to Plaintiffs and other class members arose. Such transfers were made without an exchange of reasonably equivalent value. When the claims of Plaintiffs and other class members are taken into account, some or all parties were insolvent at the time of the transfers or became insolvent as a result of the transfers.

70. The Fraudulent Transfer Act empowers the Court to identify the transferees and recoup the transferred assets or proceeds thereof for the benefit of Plaintiffs' and other class members' claims. The Act authorizes the Court to set aside the transfers, attach the transferred assets and other property of the transferees, enjoin Defendants from further transfers, appoint a receiver to take charge of the transferred assets and other property of the transferees, and award "any other relief that the circumstances may require." Ohio Rev. Code Ann. § 1336.07.

71. The Act further authorizes the Court to award compensatory damages and attorneys' fees to Plaintiffs and other class members, as well as punitive damages to deter Defendants and others from such unlawful conduct. Ohio Rev. Code Ann. § 1336.07(A)(3). *See, e.g., Renbolt v. Kern*, 2013-Ohio-1359, 2013 WL 1390607 (Ohio App. Apr. 5, 2013) (§ 1336.07 "provides not only for the setting aside of a fraudulent transfer" but

16

also "any other relief that the circumstances may require," including "punitive damages and attorney fees"); *Individual Bus. Servs. v. Carmack*. 2013-Ohio-4819 (Ohio App. Nov. 1, 2013) (quoting *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App. 3d 651, 729 N.E.2d 768 (8th Dist. 1999) ("the amount of recovery in a fraudulent transaction case is not always limited by the amount of the fraudulent transaction")).

72. In the Wage Case, Judge Barker has previously ruled that this instant matter "is a putative class action involving claims under Ohio's Fraudulent Transfer Act, Ohio Rev. Code 1336.01, et seq., as well as state law claims for breach of contract, civil conspiracy, and declaratory relief… the fraudulent transfer, civil conspiracy, and declaratory relief claims are distinct and well beyond the scope of the Wage Case."

## COUNT THREE
**(Civil Conspiracy to Commit Fraudulent Transfers)**

73. Plaintiffs incorporate the paragraphs above as if fully re-written herein.

74. Defendants planned, arranged, and conspired among themselves, and/or with transferee parties, to transfer assets as heretofore alleged, and Defendants effectuated transfers in furtherance of their plan.

75. As a direct and proximate result of Defendants' conspiracy to commit fraudulent transfers, Plaintiffs and other class members have suffered damages including but not limited to unpaid wages and interest.

## COUNT FOUR
**(Declaratory Relief)**

76. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

17

77. Under R.C. § 2721.02, "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed."

78. Pursuant to R.C. §§ 2721.01 to 2721.15, a justiciable controversy exists between Plaintiffs and Defendants.

79. A declaratory judgment will aid in determining the rights and obligations of the parties.

80. As a part of the Court's final judgment in this action, Plaintiffs request a declaration that:

   (a) Assets of FSO and/or other entities were transferred among Defendants and/or to other persons and entities;

   (b) The transfers violated provisions of the Ohio Fraudulent Transfer Act, R.C. § 1336.01, et seq.;

   (c) The transfers were made with the actual intent to hinder, delay, or defraud their creditors, and rendered FSO and other Defendants unable to pay obligations that Defendants knew had been incurred and were being incurred to Plaintiffs and other class members;

   (d) The transfers were made with ill will toward Plaintiffs and other class members, or with conscious disregard for their rights that had a great probability of causing substantial harm; and

   (e) The transfers should be set aside for the payment of Plaintiffs' and other class members' claims.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and the Class;

B. Enter judgment against Defendants and in favor of Plaintiffs and other class members;

C.     Award declaratory relief in favor of Plaintiffs and other class members as herein requested;

D.     Award legal and equitable relief in favor of Plaintiffs and other class members, including setting aside the contested transactions to the extent necessary to satisfy Defendants' obligations to Plaintiffs and other class members, as well as attorneys' fees and costs of this action;

E.     Award compensatory or statutory damages, as well as punitive damages, to Plaintiffs and other class members;

F.     Award Plaintiffs their costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

                Respectfully submitted,

                s/ Scott D. Perlmuter
                Scott D. Perlmuter (0082856)
                **TITTLE & PERLMUTER**
                4106 Bridge Avenue
                Cleveland, OH 44113
                Phone: 216-285-9991
                Fax: 888-604-9299
                Email: tittle@tittlelawfirm.com

                s/ Thomas A. Downie
                Thomas A. Downie (0033119)
                46 Chagrin Falls Plaza #104
                Chagrin Falls, Ohio 44022
                440-973-9000
                tom@chagrinlaw.com

                Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

                s/ Scott D. Perlmuter
                Scott D. Perlmuter (0082856)

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties having appeared as indicated on the electronic filing receipt.

Plaintiffs will separately serve the new party Defendants.

                                      *s/ Scott D. Perlmuter*
                                      Scott D. Perlmuter (0082856)